FILED

2023 Nov-06  AM 10:46
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | | |
|---|---|---|
| **ANDREW MCGEE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **No. 4:22-cv-01041-LSC** |
| **KILOLO KIJAKAZI,** | ) | |
| **Acting Commissioner,** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OF OPINION

## I.    Introduction

The plaintiff, Andrew McGee ("McGee" or "Plaintiff"), appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for a period of disability, Supplemental Security Income ("SSI"), and Disability Insurance Benefits ("DIB"). McGee timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.    Background

McGee completed both his General Educational Development ("GED") test and specialized electronic engineering job training at a vocational school. (Tr. at 474.) Additionally, he enrolled in electronic engineering courses at a community

college but did not complete the degree. (Tr. at 105, 474.) He previously worked as a motor vehicle assembler and a fast-food cook. (Tr. at 103–05, 118–19, 475.) He was twenty-eight at the time of his application for a period of disability, DIB, and SSI on January 22, 2020. (*See* Tr. at 126, 157, 221, 396.) McGee's application for benefits claimed a disability onset date of June 2, 2017. (Tr. at 127, 158, 189, 222.)

The Social Security Administration established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for a period of disability, DIB, or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made under a particular step, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the claimant is engaged in substantial gainful activity ("SGA"). *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the claimant's medically determinable physical and mental impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and that does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding

of not disabled. *Id.* The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that the claimant was not disabled).

Similarly, the third step requires the evaluator to consider whether the claimant's impairment or combination of impairments meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. *Id.*

If the claimant's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the claimant has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *Id.*

The fifth and final step requires the evaluator to consider the claimant's RFC, age, education, and work experience in order to determine whether the claimant can

adjust to other work. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the claimant cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the Administrative Law Judge ("ALJ") found that Plaintiff has not engaged in SGA since his alleged disability onset date. (Tr. at 13–14.) Next, the ALJ found that Plaintiff has seven severe impairments: "obesity, Asperger's syndrome, panic disorder, depression, labral tear of right shoulder, loss of vision of the left eye, and degenerative disc disease." (*See* Tr. at 14.) The ALJ also found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 14–18.) Following this determination, the ALJ established that Plaintiff has the following RFC:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he should never climb ladders, ropes or scaffolds; he can frequently reach overhead and laterally with the right upper extremity; he can frequently handle and finger with his bilateral upper extremities; he can have only occasional exposure to extremes of cold and full body vibration[;] he should have no exposure to hazards such as unprotected heights and hazardous machinery; he would be able to perform job duties that do not require precise depth perception (i.e., threading a needle); he could perform jobs that do not require peripheral vision on the left side[;] he would be able to recognize ordinary hazards in the workplace such as doors ajar, approaching vehicles and boxes on the floor; he would be able to understand, remember, and carry out simple

instructions and tasks[;] he could tolerate changes in the workplace that are infrequent and gradually introduced; he can have occasional work-related interaction with supervisors and coworkers and no contact with the general public.

(Tr. at 19.)

The ALJ determined that Plaintiff is unable to perform any of his past relevant work. (Tr. at 32.) The ALJ also established that Plaintiff was a "younger individual" at twenty-five years old on his original alleged disability onset date and has a high school education. (*Id.*) However, the ALJ also concluded that the "[t]ransferability of job skills is not material to the determination of disability [in this case] because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." (Tr. at 33.)

The ALJ enlisted a vocational expert ("VE"). Considering Plaintiff's age, education, work experience, and RFC in conjunction with the Medical-Vocational Guidelines, the VE found that there are a significant number of jobs in the national economy Plaintiff could perform, such as mail sorter, final inspector, and injection molding machine tender. (Tr. at 33–34.) The ALJ concluded Plaintiff "ha[d] not been under a disability, as defined in the Social Security Act, from June 2, 2017," which was Plaintiff's original alleged disability onset date, through November 15, 2021, the date of the ALJ's decision. (Tr. at 34.)

## III.   Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided that those findings are supported by substantial evidence but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *See Miles*, 84 F.3d at 1400 (citing *Martin v.*

*Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984) (citing *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1989)).

## IV.   **Discussion**

Plaintiff argues that the ALJ's decision should be reversed and remanded for four reasons: (1) the ALJ did not properly determine that Plaintiff's hand and neck tremors and his anxiety are a severe impairment, (2) the ALJ did not pose a complete hypothetical question to the VE, (3) the ALJ improperly discounted and did not fully consider the testimony of June Nichols, Psy. D., Plaintiff's treating physician, and (4) the ALJ did not consider the combined effects of Plaintiff's physical and mental impairments.

### a.  **The ALJ properly considered Plaintiff's hand and neck tremors and anxiety.**

Plaintiff first argues that the ALJ erroneously found his hand and neck tremors not to be a severe impairment. (Doc. 14 at 17.) At step two, the ALJ had to determine whether Plaintiff had a medically determinable impairment or combination of

impairments that is "severe." 20 C.F.R. §§ 404.1520(c), 416.920(c). The burden of showing that an impairment is "severe" rests at all times with Plaintiff. *Turner v. Comm'r of Soc. Sec.*, 182 F. App'x 946, 948 (11th Cir. 2006) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). The second step of the process "acts as a filter." *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). Therefore, if the ALJ finds one severe impairment, they will continue to the next step of the process. *See id.* "Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010).

The ALJ found numerous severe impairments: "obesity, Asperger's syndrome, panic disorder, depression, labral tear of right shoulder, loss of vision of the left eye, and degenerative disc disease." (Tr. at 14.) As discussed above, the ALJ is not required to find all severe impairments. *See Heatly*, 382 F. App'x at 825.

Moreover, an impairment must be medically determinable before it can be found to be severe. *See* 20 C.F.R. §§ 404.1520, 416.920. To be medically determinable, it must be demonstrated by objective medical evidence. *See id.* §§ 404.1521, 416.921; *see also* 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability . . . ; there must be medical . . . findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment

that results from anatomical, physiological, or psychological abnormalities.")

The only mention of Plaintiff's tremors is in his application and transcript of the oral hearing. (*See* Tr. at 114, 116, 128.) For example, when he visited Childrens Health System on June 27, 2007, Plaintiff's mother completed a form to disclose all symptoms experienced by Plaintiff. (*See* Tr. at 742.) She specifically did not mark Plaintiff experienced any tremors. (*Id.*) More recently, Plaintiff visited consulting physician Dr. Russell Stanley, D.O. for a physical exam on September 19, 2020. (*See* Tr. at 1051–59.) In the evaluating notes, Plaintiff stated he frequently dropped things with his hands. (Tr. at 1052.) However, in Dr. Stanley's review of Plaintiff's systems, he noted "[n]o headache, dizziness, syncope, seizure history, [or] tremor . . . ." (Tr. at 1053.) Dr. Samuel Fleming, PhD, who was also a consulting psychology physician for Plaintiff, included in his notes from a visit on August 19, 2020, that "[n]o unusual mannerisms or motor activity were noted." (Tr. at 1047.) Lastly, according to Plaintiff's brief, the shaking appears to happen during Plaintiff's panic attacks (Doc. 14 at 18), and the ALJ found the panic attacks to be a severe impairment. (Tr. at 14.) Therefore, it is unclear that Plaintiff's shaking is distinctly different from his panic attacks. And, to the extent the two are different, there is no objective medical evidence in the record to support Plaintiff's claims of hand and neck tremors.

The same standard applies to Plaintiff's anxiety. However, unlike the hand

and neck tremors, there is objective medical evidence in the record. For example, during Dr. Stanley's physical exam on September 19, 2020, he noted Plaintiff was "[p]ositive for anxiety." (Tr. at 1053.) Dr. Fleming echoed those concerns during Plaintiff's visit on August 19, 2020, writing that Plaintiff has "social interaction problems" and that Plaintiff "stated that he becomes anxious in large groups." (Tr. at 1048.) Moreover, Plaintiff's one-time primary care physician, Dr. John Raines, D.O., assessed Plaintiff during a visit on May 8, 2017, and diagnosed him with "Generalized Anxiety Disorder." (Tr. at 1077–78.)

However, as discussed above, the ALJ is not required to find all severe impairments. Any error by the ALJ in omitting Plaintiff's anxiety from the list of severe impairments was harmless because she found other severe impairments, proceeded to step three, and considered all of Plaintiff's impairments in determining whether Plaintiff had a listed impairment. *See Vangile v. Comm'r, Soc. Sec. Admin.*, 695 F. App'x 510, 514 (11th Cir. 2017) (finding that "any step two error the ALJ may have committed by failing to explicitly mention [the claimant's] chronic mastoiditis was harmless because she found two other severe impairments," proceeded to step three of the analysis, and considered all of the claimant's impairments—including the one omitted at step two—in determining that the claimant did not have a "combination of impairments" that met or was medically equal in severity to one of the listed impairments).

The ALJ considered Plaintiff's anxiety at both step three and step four. For example, when determining Plaintiff has a moderate limitation when interacting with others, the ALJ considered Plaintiff's allegations of "nervousness, anxiousness, intolerance of social activity, and panic attacks." (Tr. at 15.) At step four, the ALJ noted the symptoms Plaintiff endorsed, including anxiety. (Tr. at 20.) Therefore, the ALJ considered Plaintiff's anxiety at the other steps in the process, and she did not commit a reversible error.

For the reasons detailed above, this Court finds there was substantial evidence for the ALJ to find that Plaintiff's hand and neck tremors were not a severe impairment. Further, the ALJ properly considered Plaintiff's anxiety throughout the five-step process. Thus, this Court will not disturb the decision of the ALJ.

### b.  The ALJ posed a complete hypothetical question to the VE.

Plaintiff alleges the ALJ erred by failing to comprehensively describe his "anxiety impairment, including his hand and neck tremors." (Doc. 14 at 18.) The hypothetical question to the VE stems from the ALJ's determination of Plaintiff's RFC. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). A claimant's RFC reflects his ability to perform "work-related physical and mental activities in a work setting" within a forty-hour work week in light of his "functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms." SSR

96-8p, 1996 WL 374184, at *1 (July 2, 1996); *see also* 20 C.F.R. §§ 404.1520(e), 416.920(e). "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." SSR 96-8p, 1996 WL 374184, at *1 (emphasis in original). The ALJ bases a claimant's RFC on all the evidence in the record, including information about the claimant's symptoms and medical opinions. *Id.* at *2. Moreover, the determination of a claimant's RFC lies within the sole purview of the ALJ, not the doctors providing medical opinions or other evidence. *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) ("[T]he task of determining a claimant's [RFC] and ability to work is within the province of the ALJ, not of doctors.").

Therefore, after determining the plaintiff's RFC, the ALJ poses the hypothetical question to the VE. When the ALJ poses a hypothetical consistent with an RFC that is supported by substantial evidence, the ALJ does not err in posing that hypothetical. *Bouie v. Astrue*, 226 F. App'x 892, 895 (11th Cir. 2007). However, in the hypothetical question, the ALJ is not required to include functional limitations she properly rejected as unsupported. *See McSwain v. Bowen*, 814 F.2d 617, 619–20 & n.1 (11th Cir. 1987); *Martinson v. Shalala*, 843 F. Supp. 1448, 1450–51 (M.D. Fla. 1994) (approving hypothetical questions relying on "objective medical testimony" of plaintiff's physicians but disregarding plaintiff's complaints of pain, which were found to be incredible).

Similar to the reasoning that the ALJ did not err in finding the tremors or anxiety not to be severe impairments, the ALJ was not required to include the tremors in the RFC because the alleged impairment lacked objective medical evidence. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004). However, as described above, the ALJ must consider the Plaintiff's anxiety as it relates to his ability to work. *See Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005). Here, the ALJ considered anxiety-related restrictions in the RFC. For example, she included a limitation that Plaintiff could "tolerate changes in the workplace that are infrequent and gradually introduced." (Tr. at 19.) This conclusion resulted from findings from Dr. Fleming and Dr. Raines. (Tr. at 21–22.) The two doctors, as previously mentioned, considered Plaintiff's struggles with anxiety. (*See* Tr. at 992, 1047, 1049.) Also, Plaintiff can only have "occasional work-related interaction with supervisors and coworkers and no contact with the general public." (Tr. at 19.) In addition to the opinions from Dr. Fleming, the ALJ stated the conclusions were consistent with opinions from the state agency psychological consultants. (Tr. at 27.) Dr. Harold Veits, M.D., a consulting physician at the state level, reviewed the submitted evidence on September 3, 2020, and concluded Plaintiff had a moderate limitation interacting with peers and supervisors. (*See* Tr. at 151.) Another consulting physician at the state level, Dr. Teresa Moran, M.D., concurred with the conclusion after reviewing the evidence on February 16, 2021.

(*See* Tr. at 215.)

The ALJ properly included work-related restrictions, supported by the medical record, in the RFC. Relying on the RFC, the ALJ posed a complete hypothetical question to the VE; therefore, the ALJ did not err.

### c.  The ALJ did not improperly discount Dr. Nichols's opinion.

### i.  Weight of the Doctor's Opinion

First, Plaintiff alleged the ALJ did not give proper weight to Dr. Nichols's conclusions. (*See* Doc. 14 at 19.) The ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. §§ 404.1520c(a). In evaluating medical opinions and prior administrative medical findings, the ALJ will consider the following: supportability, consistency, relationship with the claimant, length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, examining relationship specialization, and other factors. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). While the ALJ must explain the role of the supportability and consistency factors in evaluating the opinion of a medical source or administrative medical finding, she is not required to do the same for the other factors. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

Supportability and consistency are the "most important factors" to determine the persuasiveness of a medical opinion. *Id.* For supportability, "[t]he more relevant

the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1). For consistency, "[t] he more consistent a medical opinion[] or prior administrative medical finding[] is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] or prior administrative medical finding[] will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

The ALJ properly considered Dr. Nichols's testimony and substantial evidence supports her findings. First, the ALJ explained Dr. Nichols's conclusions were not "adequately supported." (Tr. at 30.) Plaintiff visited Dr. Nichols for a consulting psychological evaluation on September 29, 2021. (*See* Tr. at 1388.) After, she filled out a separate form entitled "Mental Health Source Statement" on October 13, 2021. (*See* Tr. at 1393.) Dr. Nichols seemingly contradicted herself between her exam notes and the later form. In her psychological evaluation notes, she described Plaintiff as "neat and clean." (Tr. at 1390.) However, on the "Mental Health Source Statement," she circled an answer that indicated Plaintiff could not perform basic standards of neatness and failed to describe what led to that conclusion. (*See* Tr. at 1393.) The ALJ pointed out this contradiction when considering Dr. Nichols's opinion. (Tr. at 31.)

Even for the conclusions that do not directly contradict themselves, Dr. Nichols failed to adequately explain her conclusions and to support them with objective medical evidence. *See* 20 C.F.R. § 404.1520c(c)(1). On the form, there are thirteen questions. (Tr. at 1393.) The entire form does not have a single word of explanation covering the reasons she circled "yes" or "no." (*See id.*) Therefore, the ALJ correctly considered the lack of explanation from Dr. Nichols under the supportability factor in determining that her conclusions were not as persuasive as the opinion of other doctors.

Additionally, the ALJ explained the consistency factor, which also weighed against Dr. Nichols's conclusions. (*See* Tr. at 31.) For example, during her evaluation on September 29, 2021, Dr. Nichols stated the Plaintiff "cannot interact with supervision." (Tr. at 1391.) Plaintiff worked at Five Guys for three years, where Plaintiff started out as a "normal employee" but moved up to "hospitality manager." (Tr. at 103.) In these roles, Plaintiff managed other employees, counted money, and placed the money in a safe. (*Id.*) The ALJ concluded job requirements Plaintiff performed were not consistent with the "extreme limitations" put forth by Dr. Nichols. (Tr. at 31.) Moreover, Dr. Nichols stated Plaintiff could not "adhere to basic standards of neatness and cleanliness." (Tr. at 1391.) However, during a visit with Dr. Fleming on August 19, 2020, Plaintiff had "adequate" personal hygiene. (Tr. at 1047.) Dr. Fleming also concluded Plaintiff has only a "mild" limitation in his

"[a]bility to manage basic care." (Tr. at 1050.)

Therefore, the ALJ explained her considerations when analyzing the supportability and consistency factors. And her analysis and conclusions are supported by substantial evidence. For these reasons, this Court will not disturb the decision of the ALJ.

### ii. Duty to Recontact the Doctor

Plaintiff alleges the ALJ erred by not recontacting Dr. Nichols for further explanation. (Doc 14. at 19–20.) In all Social Security Disability cases, the plaintiff bears the ultimate burden of proving disability and is responsible for furnishing or identifying medical and other evidence regarding his impairments. *Doughty*, 245 F.3d. at 1280; 42 U.S.C. § 423(d)(5)(A). Furthermore, "[i]t is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so." *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). However, the ALJ is "tasked not only with the obligation to consider the reasons offered by both sides, but also with actively developing the record in the case." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1356 (11th Cir. 2018).

Before remanding for further development of the record, a reviewing court must consider "whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" *Smith v. Schweiker*, 677 F.2d 826, 830 (11th Cir. 1982) (quoting *Ware v. Schweiker*, 651 F.2d 408, 413 (5th Cir. 1981)). "[A]lthough

the ALJ has a duty to develop a full and fair record, there must be a showing of prejudice before [a reviewing court] will remand for further development of the record." *Robinson*, 365 Fed. App'x at 995 (citing *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995)).

Plaintiff places the burden on the ALJ to recontact Dr. Nichols regarding her conclusory statements. (*See* Doc. 14 at 19–20.) But the nature of the relationship— and precedent—mandate the opposite conclusion. To begin with, Plaintiff is a patient of Dr. Nichols and therefore has direct contact with the medical provider and access to all records. (*See* Tr. at 23, 1388–93.) Additionally, the ALJ pointed out that Plaintiff's attorney crafted the form for Dr. Nichols to fill out. (Tr. at 30.) This shows that not only did Plaintiff have contact with the doctor, so did Plaintiff's lawyer. The attorney could have easily recontacted Dr. Nichols to gather more objective medical evidence before submitting the report. Therefore, the sufficiency of the medical evidence provided to prove a disability and to support Dr. Nichols's conclusion lies solely on Plaintiff's shoulders—not the ALJ. Even if Plaintiff did not bear the burden of proving any disabilities, he has not demonstrated any prejudice. Therefore, the ALJ did not err in failing to recontact Dr. Nichols.

### iii.  ALJ's Alleged Bias

Plaintiff also alleges the ALJ was biased. (Doc 14. at 23.) As discussed above, a claimant is entitled to a full and fair hearing. *Clark v. Schweiker*, 652 F.2d 399,

404 (5th Cir. 1981). "An administrative law judge shall not conduct a hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision." 20 C.F.R. § 404.940. If there is bias, the claimant is entitled to an unbiased reconsideration of his application for benefits before a different ALJ. *Miles*, 84 F.3d at 1401. However, "[a] presumption exists that judicial and quasi-judicial officers such as ALJs are unbiased." *Coley v. Comm'r of Soc. Sec.*, 771 F. App'x 913, 920 (11th Cir. 2019) (citing *Schweiker v. McClure*, 456 U.S. 188, 195 (1982)). While a conflict of interest or other specific reasons demonstrate bias, generalized accusations are not enough. *Id.* And the party claiming bias bears the burden of proving the assertion. *Id.*

First, Plaintiff likely waived this argument, as the Commissioner points out. (*See* Doc. 19 at 17.) The regulation demands a plaintiff to raise concerns of ALJ bias to the ALJ at the "earliest opportunity." *See* 20 C.F.R. § 404.940. The "earliest opportunity" to present the allegations of bias was before the Appeals Council. *See Miles*, 84 F.3d at 1400–01 (noting the Appeals Council was the earliest opportunity to bring allegations of bias based on an ALJ opinion). Plaintiff did not raise the issue. (*See* Tr. at 357–60.) However, the allegations of bias stem from the ALJ's opinion, after all proceedings with the ALJ concluded. (*See* Doc. 14 at 19–22.) Therefore, Plaintiff could not raise the issue to the ALJ, as specifically demanded by the regulations. Nevertheless, Plaintiff should have presented the allegations of bias to

the Appeals Council. Because Plaintiff did not raise the issue to the Appeals Council,
he likely waived it.

Notwithstanding the waiver issue, Plaintiff's assertion lacks merit. Plaintiff
contends that the ALJ made "critical remarks" about Plaintiff's attorney in her
opinion. (Doc. 14 at 21.) The Supreme Court has said that "[j]udicial remarks during
the course of a trial that are critical or disapproving of, or even hostile to, counsel,
the parties, or their cases, ordinarily do not support a bias or partiality challenge."
*Liteky v. United States*, 510 U.S. 540, 555 (1994). Further, "expressions of
impatience, dissatisfaction, annoyance, and even anger, that are within the bounds
of what imperfect men and women . . . sometimes display" do not solely establish
bias. *Id.* at 555–56. Therefore, a showing of prejudice "at least requires a showing
that the ALJ did not have all of the relevant evidence before him . . . , or that the ALJ
did not consider all of the evidence in the record in reaching his decision." *Kelley v.
Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985).

Plaintiff is undoubtedly entitled to a fair hearing. However, his allegations of
bias concerning the ALJ's "critical remarks" and belief the ALJ should have
recontacted Dr. Nichols are not enough to overcome the presumption the ALJ is
unbiased. As explained above, critical remarks are not enough.  Further, the remarks
made by the ALJ were arguably not "critical" of Plaintiff's attorney. Rather, the ALJ
observed that the Plaintiff switched doctors and that Plaintiff's attorney created the

forms filled out by Dr. Nichols. (Tr. at 22, 24, 30.) The record contains this information. (*See* Tr. at 1308.) Furthermore, as explained above, the ALJ did not have a duty to recontact Dr. Nichols about information Plaintiff had the burden of providing. Therefore, that cannot establish bias either.

To prove his point, Plaintiff relies on *Miles*. 84 F.3d at 1400, *see* Doc. 14 at 21. However, his reliance is misguided. In *Miles*, the ALJ used outside experiences to make incorrect, conclusory statements about the plaintiff. *See Miles*, 84 F.3d at 1399–1401. As the Plaintiff admits, the ALJ did not improperly look outside the record in this case. (Doc. 14 at 21.) Therefore, *Miles* is not similar to the facts in this case. Plaintiff provides scant evidence of bias, let alone enough to overcome the presumption that ALJs are not biased.

### d. The ALJ properly considered the impact of the combination of Plaintiff's impairments.

Finally, Plaintiff argues that the ALJ erred by not finding him disabled based on a combination of physical and mental impairments. (Doc. 14 at 23.) When "a claimant has alleged a multitude of impairments, a claim for social security benefits may lie even though none of the impairments, considered individually, is disabling." *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987) (quoting *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984)). The ALJ's findings must be "specific and well-articulated." *Id.* The Eleventh Circuit has "repeatedly held that an ALJ's finding regarding a claimant's 'impairment or combination of impairments' established that

the ALJ had indeed considered the impact of the claimant's combined impairments."
*Reliford v. Barnhart*, 157 F. App'x 194, 196 (11th Cir. 2005) (citing *Wilson v.
Barnhart*, 284 F.3d 1219, 1224–25 (11th Cir. 2002)); *see also Hutchinson v. Astrue*,
408 F. App'x. 324, 327 (11th Cir. 2012) ("The ALJ specifically stated that
Hutchinson did not have an 'impairment, individually or in combination' that met
one of the listed impairments in evaluating step three of the process. That statement
shows that the ALJ considered the combined effects of Hutchinson's impairments
during her evaluation.").

The ALJ expressly stated that she considered the combination of multiple
impairments. First, the ALJ noted that Plaintiff did not allege "any particular
impairment or combination of impairments" that met the required standard. (Tr. at
14.) The ALJ opined that her own analysis of Plaintiff's alleged "impairment or
combination of impairments" did not meet the threshold of listed impairments at step
three. (*Id.*) Further, the ALJ reached the conclusion that none of Plaintiff's mental
impairments considered in combination met the "criteria of listings 12.04, 12.06, and
12.10." (*Id.*) At step four, the ALJ took a similar approach when crafting the RFC.
(*See* Tr. at 20.) The ALJ listed each impairment Plaintiff claimed when applying for
benefits. (Tr. at 19.) The ALJ again noted she considered an impairment "alone and
in combination with other impairments." (Tr. at 20.) Lastly, at step four, the ALJ
stated the mental impairments "have been considered together." (Tr. at 26.) The

ALJ's statements—just like the ALJ's statements in *Hutchinson*—show that she considered the combined effects of Plaintiff's impairments. Therefore, she did not err.

## V.      Conclusion

Upon review of the administrative record, and considering Plaintiff's argument, this Court finds the Commissioner's decision is supported by substantial evidence and is in accordance with the applicable law. For the foregoing reasons, this Court hereby AFFIRMS the Commissioner's decision.

**DONE** and **ORDERED** on November 6, 2023.

L. Scott Coogler
United States District Judge

215708